IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE FREIGHT SYSTEMS, INC., LEADER US MESSENGER, INCORPORATED, and STOTT CONTRACTING, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ILLINOIS COMMERCE COMMISSION, THOMAS BAUDINO, CRAIG BANER,[1] and LATRICE KIRKLAND-MONTAGUE, <br><br> Defendants. | No. 12 C 2486 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs Nationwide Freight Systems, Inc. ("Nationwide"), Leader U.S. Messenger, Incorporated ("Leader") and Stott Contracting, LLC ("Stott") (collectively "Plaintiffs") are motor carriers that have been separately investigated, charged, and assessed monetary penalties by defendant the Illinois Commerce Commission ("ICC") in administrative proceedings. Plaintiffs seek declaratory and injunctive relief in this court against the ICC and its agents, defendants Thomas Baudino ("Baudino"), Craig Baner ("Baner"), and Latrice Kirkland-Montague ("Kirkland-Montague"), including a finding that the ICC's investigations and related requests for documents are preempted by 49 U.S.C. § 14501(c) and an order from this court

---

[1] Odie Carpenter was originally named as an individual defendant in his official capacity as ICC Chief of Police. Carpenter retired in December 2011, and has been replaced by acting ICC Chief of Police Craig Baner. (Dkt. No. 15 ("ICC Mem.") at 1, n.1.) As Carpenter's successor, Baner "is automatically substituted as a party." Fed. R. Civ. P. 25(d). Baner has not yet filed an appearance in this case.

1

nullifying the ICC's findings and orders, barring the ICC from assessing penalties against Plaintiffs, and barring further investigation of the Plaintiffs by the ICC regarding "anything other than compliance with insurance requirements or demonstrated safety issues affecting those motor carriers." (Dkt. No. 1 ("Compl.") at 8.)[2]

Pending before the court is a "Motion to Dismiss" filed by the ICC, Baudino, and Kirkland-Montaque (collectively "the ICC Defendants"). (Dkt. No. 14.) For the reasons set forth below, the ICC Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiffs allege that each motor carrier "was the subject of an investigation, hearing and determination by the [ICC]," and that "[t]he pleadings and orders were essentially the same in each case." (Compl. ¶¶ 2, 8.) For purposes of this background section, the court relies in part on Plaintiffs' Exhibits 1-6, which are attached to the Complaint as "typical" examples of documents related to the relevant ICC investigations and proceedings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). At this stage of the litigation, the court accepts the factual allegations of the Complaint as true. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012).

The ICC's interactions with each of the Plaintiffs began when ICC Police Officer Baudino issued each motor carrier a citation "for operating as an intrastate motor carrier of property without a license from the Commission in violation of 625 ILCS 5/18c-4104(1)(A)."

---

[2] Plaintiffs have withdrawn their request for attorneys' fees under 5 ILCS 100/10-55. (Dkt. No. 18 ("Pls.' Resp") at 5.)

(Pls.' Ex. 3 at p. 19 of 54 & p. 28 of 54.)[3] Although each Plaintiff motor carrier thereafter obtained a public carrier certificate from the ICC and paid the associated fine before any hearing was held, these initial citations nevertheless prompted the ICC to initiate investigations against each of the individual motor carriers. (*Id.*)

As part of the investigations, Officer Baudino initially requested that the motor carriers produce "records we need in order to complete our investigation into your company's motor carrier operations" under 625 ILCS 5/18c-1703(2)(b). (Pls.' Ex. 1 at p. 4 of 54.) Officer Baudino's request was followed by a formal "order" from the ICC Chief of Police, then Odie Carpenter, "to produce documents and records regarding your company's transportation operations within Illinois (for example, bills of lading, driver logs, invoices, pick-up tickets, etc.)" for the relevant time period. (*Id.*; *see also* Compl. ¶ 10.) Plaintiffs objected to the ICC's requests for documents, in part on the grounds that the requests were preempted by 49 U.S.C. § 14501(c). (Pls.' Ex. 1 at p. 3 of 54; Compl. ¶ 10.)

Plaintiffs were thereafter cited with violating 625 ILCS 5/18c-4104-1-k, which prohibits operating as a motor carrier in violation of ICC regulations and orders, because of their alleged "Fail[ure] to provide records upon demand." (Pls.' Ex. 2 at p. 6 of 54 & p. 9 of 54.) Plaintiffs objected to the citations and filed their respective motions to dismiss, again arguing that the ICC's requests for documents were preempted by 49 U.S.C. § 14501. (Pls.' Ex. 2 at p. 6-7 of 54;

---

[3] Plaintiffs do not explain the impetus for the initial ICC investigations in the body of their Complaint, alleging only, "[i]n each of the cases involving the motor carrier plaintiffs, the Illinois Commerce Commission started investigations of the operations of those motor carriers." (Compl. ¶ 9.) The court assumes that the explanation set forth in the ICC "Staff's Response to Nationwide Freight Systems, Inc.'s Motion to Dismiss" (Pls.' Ex. 3) applies to all three motor carrier Plaintiffs.

Compl. ¶ 11.) On January 19, 2012, Chief Administrative Law Judge Kirkland-Montague found each of the Plaintiffs guilty of the violations charged, and ordered each motor carrier to pay a $500 civil penalty. (Pls.' Ex 4 at p. 32-34 of 54; Compl. ¶ 13.)

In a combined petition for rehearing, Plaintiffs argued in part that "the administrative law judge failed or refused to address and correctly decide that the requests for documents which were the subject of the hearings in these cases were pre-empted by 49 U.S.C. § 14501(c)." (Pls.' Ex. 5 at p. 38-54; Compl. ¶ 14.) On March 21, 2012, the ICC "in Session this date" summarily denied Plaintiffs' petition for rehearing. (Pls.' Ex. 6; Compl. ¶ 15.)

## LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The federal statute at issue in this case generally provides, with certain exceptions explained below, that States "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

## ANALYSIS

Before turning to the factual allegations of Plaintiffs' Complaint, the court must first address fundamental issues of subject matter jurisdiction and sovereign immunity.

1. <u>Jurisdiction</u>

"It is the responsibility of a court to make an independent evaluation of whether subject matter jurisdiction exists in every case." *Foster v. Hill*, 497 F.3d 695, 696–97 (7th Cir. 2007); *see also Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("Jurisdiction is the power to declare law, and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction *sua sponte*, they must.") (quotation omitted).

Plaintiffs assert "[t]his Court has jurisdiction pursuant to 28 U.S.C. § 1337 by reason that this is an action brought under and pursuant to 49 U.S.C. § 14501." (Compl. ¶ 4.) The court disagrees. By its plain language, § 14501(c) does not create a cause of action. *See Henry's Wrecker Serv. Co. of Fairfax County, Inc. v. Prince George's County*, 214 F. Supp. 2d 541, 546 (D. Md. 2002) (Chasanow, J.) ("the text and structure of § 14501(c)(1) do not demonstrate a congressional intent to confer individual rights to motor carriers"). Rather, as noted by District Judge Philip G. Reinhard, "Federal preemption is ordinarily a federal defense to a lawsuit . . . ." *City of Rockford v. Raymond*, No. 98 C 50353, 1999 WL 218549, at *1 (N.D. Ill. Apr. 14, 1999)

(Reinhard, J.) (finding that § 14501(c) does not establish complete preemption or "give rise to federal jurisdiction" for purposes of removal). Without a specific cause of action based on § 14501(c), Plaintiffs' claims in this lawsuit do not "aris[e] under an[ ] Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337(a). The cases cited by Plaintiffs in support of their position do not explicitly rely on either § 14501 or § 1337 for federal subject matter jurisdiction. *See Rowe v. New Hampshire Motor Transport Assoc.*, 552 U.S. 364 (2010); *Stucky v. City of San Antonio*, 260 F.3d 424 (5th Cir. 2001).

The court agrees with the ICC Defendants that 28 U.S.C. § 1331 provides subject matter jurisdiction over Plaintiffs' preemption claims in this case, insofar as Plaintiffs' claim arise under the Supremacy Clause of the Constitution. As the Supreme Court of the United States has explained, "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, . . . presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). Plaintiffs' claims, legal argument, and requested relief fit this description; the court therefore concludes that it has jurisdiction over Plaintiffs' claims under § 1331.

2.  Eleventh Amendment

Plaintiffs have named the ICC as a defendant, while recognizing that the ICC is "an agency of the state of Illinois." (Compl. ¶ 1.) Plaintiffs also bring their claims against individual defendants Baudino, Baner, and Kirkland-Montague "as agents of the Illinois Commerce Commission and not in their individual capacities." (*Id.*)

The Eleventh Amendment to the United States Constitution bars federal courts from hearing lawsuits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Notwithstanding the phrase 'Citizens of another State,' the Supreme Court 'has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Indiana Protection & Advocacy Servs. v. Indiana Family & Soc. Service Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).

Plaintiffs and the ICC Defendants agree that the Eleventh Amendment does *not* bar claims that (1) are brought against individual state officials; (2) are based on an alleged ongoing violation of federal law; and (3) seek prospective injunctive relief. *Id.* at 371. Accordingly, Plaintiffs' claims against Baudino, Baner, and Kirkland-Montague are not barred by the Eleventh Amendment.

The ICC Defendants argue, however, that the ICC should be dismissed as a party pursuant to the Eleventh Amendment's bar. Plaintiffs do not respond to this argument. It is well established that, "[i]n the absence of the state's consent or a valid Congressional override, the Eleventh Amendment prohibits a suit in federal court 'in which the State or one of its agencies or departments is named as the defendant.'" *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Plaintiffs have not articulated any valid exception to the Eleventh Amendment's bar as applied to the ICC, and the court is not aware of any. The ICC is therefore dismissed as a defendant from this lawsuit.

3. <u>Preemption Claim</u>

Plaintiffs have alleged in their Complaint that the ICC Defendants' "investigation and request for documents" is a "state action" preempted by federal statute. (Compl. ¶ 27.) As noted above, the federal statute at issue in this case provides that States "may not enact *or enforce* a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (emphasis added). Viewing the allegations of the Complaint in the light most favorable to Plaintiffs, as the court must do at this stage of the litigation, the court understands Plaintiffs to be challenging the ICC Defendants' enforcement of 625 ILCS 5/18c-1703(2)(b). That statute provides, in relevant part, that "Authorized employees of the Commission shall have the power at any and all times to examine, audit, or demand production of all accounts, books, records, memoranda, and other papers in the possession or control of a license or registration holder, its employees or agents." 625 ILCS 5/18c-1703(2)(b).

The United States Supreme Court has interpreted § 14501(c)(1), and related language from the Airline Deregulation Act of 1978 ("ADA") addressing "rates, routes, or services," to reflect the following "general principles":

> (1) that "[s]tate enforcement actions having a connection with, or reference to" carrier "'rates, routes, or services' are pre-empted," (2) that such pre-emption may occur even if a state law's effect on rates, routes or services "is only indirect"; (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation; and (4) that pre-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives.

*S.C. Johnson & Son, Inc. v. Transport Corp. of Am., Inc.*, 697 F.3d 544, 552 (7th Cir. 2012) (quoting *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370-71 (2008)).

Plaintiffs' claims are based on the first principle—that the ICC Defendants' enforcement of 625 ILCS 5/18c-1703(2)(b) is preempted because it has a connection with, or refers to, carrier rates, routes, and services. (*See* Compl. ¶¶ 21-22, 27.)[4]

It is undisputed that the ICC Defendants sought "documents and records regarding your company's transportation operations within Illinois (for example, bills of lading, driver logs, invoices, pick-up tickets, etc.)" for the relevant time period. (Pls.' Ex. 1 at p. 4 of 54.) By their very nature, the type of documents requested are clearly "related to a price, route, or service" of a motor carrier. 49 U.S.C. § 14501(c)(1). Although the Illinois statute itself does not specifically refer to any particular type of documents, the court agrees with Plaintiffs that, as alleged, the ICC Defendants' enforcement of 625 ILCS 5/18c-1703(2)(b) does have a connection with the Plaintiff motor carriers' prices, routes, or services.

Plaintiffs acknowledge an exception to § 14501(c)(1) that permits States "to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo" and "to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization." 49 U.S.C. § 14501(c)(2)(A); (*see* Compl. ¶ 24(b) and Requested for Relief at 8). Consistent with this authority, the ICC Defendants are permitted to gather certain information about Plaintiffs' operations within the state of Illinois. In other words, as long as the ICC Defendants' actions are "genuinely responsive to safety [or insurance] concerns," their enforcement of 625 ILCS 5/18c-

---

[4] Plaintiffs have not alleged that the Illinois statute at issue has *any* effect—direct or indirect— on rates, routes or services. Likewise, Plaintiffs have not alleged or argued that the Illinois statute has a significant impact on Congress' objective of deregulating the motor carrier industry.

1703(2)(b) is not preempted by 14501(c)(1). *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 442 (2002).

Plaintiffs allege that, in this case, the ICC Defendants impermissibly attempted to regulate Plaintiffs' prices, routes, and services by requiring Plaintiffs to keep and produce certain records not related to safety or insurance concerns. (Compl. ¶¶ 24-27.) In light of the allegation that the ICC officer testifying in the Stott case admitted he was *not* seeking information regarding the motor carrier's insurance, and to the extent Plaintiffs were specifically required to produce information about their rates, the court finds that Plaintiffs have stated a plausible right to relief. No more is required at this stage of the litigation.

## CONCLUSION

For the reasons set forth above, the ICC Defendants' "Motion to Dismiss" (Dkt. No. 14) is granted in part and denied in part. The Illinois Commerce Commission is dismissed as a defendant. The remaining ICC Defendants' Answer is due on or before 12/4/12. Counsel for all parties are requested to meet and confer in accordance with Rule 26(f) and jointly file a Form 52 on or before 12/11/12. Status hearing set for 12/20/12 at 9:00 a.m. for purposes of entering a scheduling order. The parties are encouraged to discuss settlement.

        ENTER:

        *James F. Holderman*
        JAMES F. HOLDERMAN
        Chief Judge, United States District Court

Date: November 26, 2012